IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY RACKOVAN, <br><br> **Plaintiff,** <br><br> v. <br><br> THE PENNSYLVANIA STATE UNIVERSITY, <br><br> **Defendant.** | **COMPLAINT** |

Plaintiff Zachary Rackovan ("Mr. Rackovan" or "Plaintiff") brings this federal and Commonwealth employment discrimination complaint against Defendant The Pennsylvania State University ("the University" or "PSU" or "Penn State") and alleges as follows:

## INTRODUCTION

1. This suit concerns Penn State University's decision to fast-track termination of Mr. Rackovan, a fully remote Penn State employee, after he requested a religious exemption from the University's weekly COVID-19 testing mandate.

2. Mr. Rackovan comprehensively and repeatedly informed the University that he had sincere religious, not medical, objections to both the University's vaccine mandate and the weekly testing mandate, basing his explanations on Scripture, explicit religious reasoning, and a letter from his pastor.

3. Such an accommodation would have cost the University literally nothing, nor could it have interfered with their academic business, because Mr. Rackovan's media job was fully remote and he did not come on campus, nor was he required to come on campus for any of the pertinent dates in this Complaint.

4.       Nonetheless, the University denied the accommodation to exempt Mr. Rackovan from weekly testing and immediately began to fast-track Mr. Rackovan's termination on the pretextual theory that his noncompliance with the weekly testing was poor employee "performance."

5.       Three days after terminating Mr. Rackovan for not complying with the weekly testing requirement, the University dropped that requirement for all staff, students, and faculty.

6.       Mr. Rackovan sought relief in the Commonwealth's administrative process within the Pennsylvania Human Relations Commission, which, after investigating, found probable cause to believe the University had discriminated against Mr. Rackovan by failing to accommodate his religious creed and had retaliated against him in violation of the law. The PHRC Probable Cause Finding is attached as Exhibit A.

7.       After the University refused the Commonwealth's administrative conciliation process, Mr. Rackovan sought and received a right-to-sue letter from the Equal Employment Opportunity Commission and now brings this federal suit. The EEOC Right-to-Sue Letter is attached as Exhibit B.

## PARTIES

8.       Plaintiff Zachary Rackovan is a natural person and resident of Tyrone, Pennsylvania, and was employed by Defendant, The Pennsylvania State University at University Park, State College, PA.

9.       Defendant The Pennsylvania State University is a public academic institution headquartered at University Park in State College, PA.

**JURISDICTION**

10. The Court has jurisdiction over the federal claims in this matter (Counts I-III) under 28 U.S.C. § 1331 because those claims arise under Title VII, a federal law.

11. The Court has jurisdiction over the state law PHRA claims (Counts IV-V) under supplementary federal jurisdiction, 28 U.S.C. § 1367, because both the federal and Commonwealth claims arose from the same controversy concerning the discipline and termination of Plaintiff.

12. The Court has personal jurisdiction over Defendant because Defendant resides in this district.

**VENUE**

13. Venue is proper in this Court because (1) Defendant resides in this district and (2) a substantial part of the events giving rise to the claims occurred in this district. 28 U.S.C. § 1391(b)(2).

**FACTUAL BACKGROUND**

14. Mr. Rackovan is a practicing evangelical Christian who is extremely active in his church community and local community as a way to show the truth of his faith. As an evangelical, he ascribes to the central tenets of evangelical Protestant Christianity—one of which being that the Bible is the Word of God, is true and inerrant, and requires obedience. See Bebbington's Quadrilateral (description of evangelicals as adhering to Biblicism, crucicentrism, conversionism, and activism). The Bible states that Christians should be discipled by the local church, including pastors. It also states that the Christian's body, as indwelt by the Holy Spirit, is a temple for which the Christian must give constant and serious care. These are widely held Christian beliefs, held in large part both within American Protestantism and within all major Christian sects, including

Catholicism and Eastern Orthodoxy, and practiced in varying forms within local communities such as Mr. Rackovan's.

15. From 2014 to March 18, 2022, Mr. Rackovan was employed as a Multi-Media Specialist 2 at Penn State. Mr. Rackovan was a fully remote worker since 2016, though his employment was based at University Park, and did not go on campus.

16. Mr. Rackovan, until the events detailed in this Complaint, had no disciplinary records in his personnel file with the University.

17. On August 24, 2021, the University instructed Mr. Rackovan to fill out a form for fully remote employees that would exempt Mr. Rackovan from the weekly testing requirement for unvaccinated employees. Mr. Rackovan was subsequently and accordingly exempted for the Fall '21 semester.

18. On October 13, 2021, the University informed all staff that it would be implementing a COVID-19 vaccine mandate for all employees.

19. On October 26, 2021, the University informed staff that any employee wishing to request an exemption would be given three days to do so.

20. On October 27, 2021, Mr. Rackovan submitted a religious accommodation request for an exemption from the COVID-19 vaccine, stating in an email to the University's "Affirmative Action Office" ("AAO"): "Nothing needs to change regarding my work environment. I have worked as a fully remote employee for years from the privacy of my home office. Since this working relationship has proven successful over that time, there would be no undue hardship for Penn State to continue with this long-standing arrangement." The request attached a note from Mr. Rackovan's pastor, included a number of Bible verses, and gave notice to the University that the basis for the religious accommodation request was Mr. Rackovan's Christian beliefs that prevented

him from being able to take the vaccine. Specifically, Mr. Rackovan notified them that, because his body is a temple for the Holy Spirit, he practices his faith by using homeopathic remedies and naturopathic treatments, as well as prayers for healing, rather than man-made pharmaceuticals.

21. On November 3, 2021, the University recognized Mr. Rackovan's request for accommodation and granted Mr. Rackovan's request only in part, exempting him from the vaccine mandate. However, in the same email, the University required that, despite Mr. Rackovan's fully remote employment, Mr. Rackovan be subjected to weekly testing for COVID-19.

22. Mr. Rackovan attempted to contact multiple persons employed by the University, including Human Resources and the Covid Response Team, to inquire why weekly testing was required for fully remote workers. He was given no explanation. Lindsey Harter, HR Manager, responded to suggest that it was a necessary condition of Mr. Rackovan's religious exemption from the vaccine mandate.

23. Mr. Rackovan maintained that the testing requirement violated his religious beliefs and accordingly requested an accommodation on that ground. On January 6, 2022, Mr. Rackovan submitted a second but related request for accommodation to the AAO, asking for an exemption from the weekly COVID-19 testing mandate on the same basis, restating the same point: "Nothing needs to change regarding my work agreement. Weekly testing is unnecessary. Even by Penn State's guidelines, the consequences of a positive test would not result in any changes to my daily routine; I would just continue working from home. I have worked as a fully remote employee for years from the privacy of my home office and have no need to be on campus."  Mr. Rackovan made it clear: His request was "not about my trust or distrust in science or our medical experts." Rather, his request was grounded in his religious belief that to comply with the weekly testing was no less than participate in lies and deceit and mental illness in contravention to the calling of his

faith. Therefore, were he to submit to the weekly testing, he informed the University, he "would not just be disappointed in myself, I would quite literally be compromising my relationship with God, and my eternal salvation." The testing accommodation request is included in full as Exhibit C.

24. The University denied Mr. Rackovan's request on February 3, 2022. The AAO told Mr. Rackovan via email: "Please note that you have been provided with the accommodation of weekly testing and masking based on your religious accommodation request to the vaccine mandate. As such, you will be required to be weekly tested and required to wear a mask where appropriate. The University policy is that all employees are required to test regardless of work location. If you are not on campus, then details for you obtaining a mail order test kit are found at virusinfo.psu.edu."

25. Mr. Rackovan quickly and unequivocally opposed the denial of accommodation. On February 7, 2022, Mr. Rackovan replied to AAO via email, stating he did not "accept the accommodation offer as reasonable" because it violated his religious beliefs. Mr. Rackovan made clear to the University that "the consequences of a positive test or a negative test are exactly the same" and "my requested accommodation poses **no** hardship for Penn State (I'm just asking to continue on with the exact same working agreement I have had in place for years as a remote employee), I would ask that you reconsider your rejection of my request."

26. On February 25, 2022, the University, through AAO Associate VP Suzanne Adair, told Mr. Rackovan he would be required to do weekly testing.

27. Mr. Rackovan did not comply with the weekly testing requirements.

28. Mr. Rackovan teleworked exclusively, including during the time period pertinent to his Complaint (i.e., November 3, 2021 to March 18, 2022). Pamela Lautsch-Bowman, who

supervised Mr. Rackovan, stated in a verified statement, as recorded by the PHRC, that Mr. Rackovan was, during all times pertinent to these claims, not required to *ever* come in-person to University Park as part of his job duties. Additionally, Program Director John W. Sankey Jr. stated in a verified statement, as recorded by the PHRC, that no in-person programs required by the University's contract with the Commonwealth were scheduled during any time pertinent to these claims that would have required Mr. Rackovan to appear in person. No in-person training sessions were scheduled between the original request for accommodation and Mr. Rackovan's termination.

29. On March 4, 2022, the University held a virtual meeting with Mr. Rackovan at which Lautsch-Bowman and Sankey were present. After the meeting, the University disciplined Rackovan, stating he was not in compliance and that it would terminate him if he did not comply with weekly testing.

30. The University began to fast-track Mr. Rackovan's termination by using a protocol that allows the University to terminate employees quickly for "performance" issues. The University did not identify any "performance" issues but instead described Mr. Rackovan's noncompliance with the testing requirement as a "performance" issue.

31. Also on March 4, 2022, subsequently to the meeting, Mr. Rackovan officially filed a religious discrimination complaint to the University's AAO.

32. On March 5, 2022, the University lifted its mandatory COVID-19 testing requirement for fully remote employees who reside outside of Pennsylvania until further notice.

33. On Friday, March 18, 2022, the University terminated Mr. Rackovan.

34. The next business day, on Monday, March 21, 2022, the University announced on its website that, beginning March 26, 2022, the University would pause its mandatory COVID-19 testing for all staff (and faculty and students).

35. Mr. Rackovan filed a complaint ("PHRA Complaint") with the Pennsylvania Human Relations Commission on April 6, 2022.

36. The PHRA Complaint alleged that the University discriminated against him due to his Christianity and retaliated against him for requesting religious accommodations in violation of 43 P.S. § 955.

37. The PHRA Complaint alleged the violations were: (1) The University's denial of Mr. Rackovan's October 27, 2021 request (maintained through February 18, 2022) that Mr. Rackovan be exempted from both the COVID-19 vaccine mandate and testing mandate because of his religious beliefs and because he worked entirely remotely; (2) the University's discharging of Mr. Rackovan on March 18, 2022 because the University refused to grant him an accommodation; and (3) the same discharging, in retaliation for Mr. Rackovan's requests for accommodations.

38. The PHRC found that Mr. Rackovan sincerely held a religious belief that conflicted with the University's job requirements, namely, the vaccine *and* testing mandates.

39. The PHRC found probable cause that the University has violated the legal requirement to accommodate Mr. Rackovan's request, because (1) the University "did not question Complainant's sincerely held religious belief"; (2) Mr. Rackovan was never required to come on campus, so any concern of spreading COVID-19 was "speculative"; so (3) the University could not show "any burden" or that "continuing the interactive process to find an alternative would not have been possible."

40. Furthermore, the PHRC found that the University had retaliated against Mr. Rackovan's protected activity. Specifically, it noted that it was "obvious" that the University "knew as of March 18, 2022, the day they told [Mr. Rackovan] he was discharged that they were going to

be changing their policy effective the following Monday." Accordingly, the PHRC found the decision to discharge to be retaliatory.

41. The PHRC recommended that the University: (1) reinstate Mr. Rackovan with benefits and pay; (2) repay him for all lost wages, including interest of 6% on back-pay liability; (3) reimburse him for out-of-pocket expenses for the PHRC process; (4) participate in anti-discrimination training by the PHRC.

42. Despite the PHRC's findings of probable cause, the University refused to participate in the conciliatory process or abide by any of the PHRC's terms. The PHRC issued a Notice of Failed Conciliation on June 20, 2023.

43. Mr. Rackovan, unable to achieve conciliation through administrative processes, obtained a right-to-sue letter from the EEOC on January 7, 2025.

44. Mr. Rackovan then filed this Complaint within ninety days. See 42 U.S.C. § 2000e-5(f)(1).

45. In the 36 months since his termination, Mr. Rackovan expected to make $193,805 at his current position.

46. In the 36 months since his termination, Mr. Rackovan has earned actual wages of $135,000.

47. Mr. Rackovan's retirement benefits would have vested in the last three years, which would have given him a guaranteed pension.

48. Mr. Rackovan had 421.5 hours of unused sick time accrued at the time of his termination.

49. Mr. Rackovan plans to send all four of his children to the University for undergraduate educations. Before his termination, he fully intended to make full use of the 75% tuition discount for each child.

50. Mr. Rackovan, as a husband and father of four children and the primary provider for his family, experienced significant stress and emotional distress over the years, dealing with the termination and the PHRA process to the present day.

### FIRST CAUSE OF ACTION
### Religious Discrimination in Violation of Title VII, 42 U.S.C. § 2000e et seq.
### (Failure to Accommodate)

51. Under Title VII, it is unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual with respect to h[is] compensation, terms, conditions or privileges of employment, because of . . . religion." 42 U.S.C. § 2000e–2(a).

52. Under 42 U.S.C. § 2000e(j), an employer must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an undue hardship for the employer.

53. Claims for religious discrimination require the following allegations: (1) he held a sincere religious belief that conflicted with a job requirement, (2) he informed his employer of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement.

54. As alleged above, Mr. Rackovan is a practicing evangelical Christian who believes fully that his physical body is a temple for the Living God; therefore, unnecessary intrusions into his bodily autonomy can be harmful and sinful. In Mr. Rackovan's religious worldview, this includes both mandate vaccines and COVID-19 testing. Accordingly, compliance with the University's requirements conflicted with Mr. Rackovan's beliefs. Mr. Rackovan's pastor has written a letter confirming as much.

55. Mr. Rackovan's religious beliefs in this context concern fundamental ways in which he views himself and his body and concern the ways in which he is ultimately required to live out his faith in the world.

56. Mr. Rackovan's belief system is grounded in a comprehensive system of American evangelical Protestantism, widely recognized and practiced in this country, as evinced by his pastor's letter. Mr. Rackovan's church and pastor, as well as Mr. Rackovan himself, practice this faith that requires a body-temple mindset, openly in public, openly preaching the same concepts of faith, both in church services and in community participation. A majority of the co-religionists in Mr. Rackovan's local faith community similarly use natural and homeopathic remedies.

57. Mr. Rackovan gave fair warning to his employer, the University, that he had religious objections to *both* the vaccine mandate and the testing mandates. Through email, he made both his objections and the grounds for his objections clear, and opposed in writing the denial of his accommodation request as it concerned the testing. Specifically, he made it clear that his body is a temple for the Holy Spirit, and that he practices homeopathic and naturopathic remedies and prayer, rather than pharmaceuticals. Additionally, Mr. Rackovan made clear to the University in his January 2, 2022 request that his grounds for requesting the exemption were not medical or scientific arguments or his distrust in science or experts. Rather, his grounds were his concerns that participation on the testing would force him to participate in an agenda of deceit that could compromise his faith. These bases for his objections were not just clearly stated in both requests for accommodation but consistently stated by Mr. Rackovan in all his interactions with his employer in person and by email.

58. The hardship on the University was so de minimis that it was essentially non-existent. Mr. Rackovan, as a fully remote worker, posed quite literally no threat to the University's

understandable goals of preventing the spread of COVID-19. The University's testing mandate obviously was imposed to prevent the spread of COVID-19. Fully remote workers have no effect whatsoever on such purpose. Furthermore, the University's denial of any exemption for Mr. Rackovan is even more unreasonable due to the fact that the University dropped its testing requirement of its own volition, three days after terminating Mr. Rackovan. This shows that the testing requirement was not necessary at that point in 2022. And, as established, it was never necessary for fully remote workers. Indeed, the University gave the option (exercised by Mr. Rackovan) for fully remote workers to be exempted from the same requirement for the Fall 2021 semester. As Mr. Rackovan explained to his employer, the result of a positive test would have been the exact same as the result of a negative test: No change to his fully remote schedule.

59. Even further still, the University dropped the requirement for fully remote workers *outside* of Pennsylvania on March 5, 2022. They did not, have not, and cannot explain the difference between fully remote employees within Pennsylvania and outside Pennsylvania.

60. The University never showed to Mr. Rackovan or the PHRC that giving Mr. Rackovan, a fully remote employee, an exemption from the testing would result in substantial increased costs in relation to the conduct of its particular business.

61. The University terminated Mr. Rackovan for not complying with the testing mandate.

**SECOND CAUSE OF ACTION**
**Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a)**

62. Plaintiff incorporates all previous allegations.

63. Title VII makes it unlawful "for an employer…to discriminate against any individual…because he has opposed any practice made an unlawful employment practice by this title." 42 U.S.C. § 2000e-3(a).

12

64. Claims for religious retaliation under Title VII require a plaintiff to prove: (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action.

65. For the reasons stated in Count I, Mr. Rackovan held and holds an objectively reasonable belief, in good faith, that the practice he opposed is unlawful under Title VII and the PHRA.

66. Mr. Rackovan's beliefs that the denial of an accommodation was unlawful PHRA were objectively vindicated by the PHRC's finding of probable cause that the practice was unlawful.

67. Mr. Rackovan opposed the unlawful denial of accommodation of his religious beliefs to be exempt from the testing mandate on March 4, 2022, by filing an official complaint of discrimination with the University's AAO.

68. On March 5, 2022, the University dropped the testing requirement for fully remote workers *outside* of Pennsylvania.

69. Nonetheless, the University terminated Mr. Rackovan on March 18, 2022.

70. Only one business day later, the University dropped the very requirement that they had claimed to be the basis for terminating Mr. Rackovan.

71. The University terminated Mr. Rackovan in the way in which it did, both when and how, because he lodged a religious objection to the testing.

72. Because the accommodation would cost the University essentially nothing, the reason the University denied the accommodation and acted against Mr. Rackovan could not have

been for business or academic reasons, especially considering he explained that his objections were sincere and he believed the law required an accommodation.

73. By firing Mr. Rackovan, the University was retaliating against his religious refusal to take the weekly tests. This was not out of concern for the spread of COVID-19, because Mr. Rackovan never came on campus, nor would he have been required to do so.

74. Mr. Rackovan was targeted for retaliation, not simply terminated for failure to comply with a job requirement.

75. *First*, the University lifted the testing mandate immediately after terminating Mr. Rackovan. The University knowingly terminated Mr. Rackovan for noncompliance (and for no other reason) with a policy the University was quite literally one business day from abrogating itself.

76. *Second*, the University chose a termination process for "performance" in order to fast-track the termination. This was pretextual, unnecessary, and retaliatory because noncompliance with the testing had nothing to do with Mr. Rackovan's performance as a Multimedia Specialist.

77. The termination of Mr. Rackovan while knowing that the testing mandate would be lifted in one business day, combined with the fact that accommodating Mr. Rackovan's religious objections would cost the University nothing, shows that the University acted with malice or at least reckless indifference to Mr. Rackovan's Title VII rights to be from religious discrimination and to have his religious beliefs be reasonably accommodated.

### THIRD CAUSE OF ACTION
**Religious Discrimination in Violation of Title VII, 42 U.S.C. § 2000e et seq.
(Disparate Treatment / Intentional Discrimination)**

78. Plaintiff incorporates all previous allegations.

79. Title VII also protects against intentional discrimination, where an employee is targeted because of his religion. As the EEOC has phrased it, an employer violates Title VII by "taking adverse action motivated by a desire to avoid accommodating a religious belief, observance, or practice that the employer knew or suspected may be needed and would not pose an undue hardship."

80. Mr. Rackovan is a member of a protected class as a confessing evangelical Christian.

81. Mr. Rackovan was qualified for the position he attempted to retain and had never had any performance issues raised by his employer.

82. Mr. Rackovan was fast-tracked for termination.

83. The University's actions give rise to an inference of intentional discrimination on the basis of Mr. Rackovan's religion.

84. Mr. Rackovan's religion and his attempt to seek an accommodation on the basis of his faith motivated, at least in part, the subsequent actions of the University against him.

85. The University knew Mr. Rackovan's religion and that he had described in detail the religious basis for his request for accommodation.

86. The University further knew that the accommodation would pose no hardship, or at least no undue hardship.

87. For the reasons alleged above in Count II, the best explanation for the University's actions against Mr. Rackovan is that the University intentionally wished to take action against him because of his religious beliefs and requests.

**FOURTH CAUSE OF ACTION**
**Religious Discrimination in Violation of PHRA, 43 P.S. § 955(a)**
**(Failure to Accommodate)**

88. Plaintiff incorporates all previous allegations.

15

89. The Pennsylvania Human Relations Act makes it unlawful "For any employer because of the…religious creed…of any individual or independent contractor…to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.." 43 P.S. § 955(a).

90. PHRA and Title VII failure to accommodate claims are analyzed under the same standard in this Circuit.

91. Plaintiff asserts the same substantive claim under the PHRA as he did for Count I.

## FIFTH CAUSE OF ACTION
### Retaliation in Violation of the PHRA, 43 P.S. § 955(d)

92. Plaintiff incorporates all previous allegations.

93. The PHRA makes it unlawful "[f]or any…employer…to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act." 43 P.S. § 955(d).

94. PHRA and Title VII religious retaliation claims are analyzed under the same standard in this Circuit.

95. For the reasons stated in Counts I & IV, Mr. Rackovan held and holds an objectively reasonable belief, in good faith, that the practice he opposed is unlawful under Title VII and the PHRA.

96. Mr. Rackovan's beliefs that the practice was unlawful under the PHRA were objectively vindicated by the PHRC's finding of probable cause that the practice was unlawful.

97. Plaintiff asserts the same substantive claim under the PHRA as he did for Count II.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rackovan prays for the following relief:

A.   A declaratory judgment stating that the University discriminated on the basis of religious belief against Mr. Rackovan in violation of both Title VII, 42 U.S.C. § 2000e–2(a), 2000e(j), 2000e-3(a), and the PHRA, 43 P.S. § 955(a), (d).

B.   An order imposing the religious freedom sensitivity training as suggested and described by the PHRC in its probable cause finding.

C.   Equitable economic damages of back pay and front pay, including, but not limited to, lost wages for 36 months, lost health insurance benefits, lost vested retirement of guaranteed pension, lost retirement in a health benefit account, lost payout of vacation and unused sick time, and lost employee discounts for Mr. Rackovan's children's future educations at Penn State University, for all Counts.

D.   Compensatory damages for emotional distress and humiliation, for all Counts.

E.   Compensatory damages for repayment of Mr. Rackovan's reasonable and verifiable out-of-pocket expenses incurred during the administrative process, including but not limited to legal fees, costs, and research time.

F.   Reasonable punitive damages, for Counts II and III.

G.   Attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), for Counts I, II, & III.

H.   Attorney's fees pursuant to 43 P.S. § 962(c.2), for Counts IV & V.

I.   Any other relief the Court deems appropriate.


Dated: April 4, 2025                                      Respectfully submitted,

                                                          /s/ *Caleb Acker*

Caleb Acker
PA Bar No. 330399
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
cacker@holtzmanvogel.com
540-341-8808

*Counsel for Plaintiff Zachary Rackovan*
