IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY RACKOVAN, | No. 4:25-CV-00603 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| THE PENNSYLVANIA STATE UNIVERSITY, | |
| Defendant. | |

**MEMORANDUM OPINION**

**NOVEMBER 7, 2025**

## I. BACKGROUND

Plaintiff Zachary Rackovan ("Plaintiff") filed an amended complaint[1] against The Pennsylvania State University ("Defendant") seeking recovery for four counts of religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951–963 ("PHRA").[2] Defendant moved to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.[3] The motion is now ripe for disposition. For following

---

[1] Doc. 16 (Amend. Compl.). Plaintiff voluntarily amended his complaint after the filing of a motion to dismiss without Court order.
[2] Doc. 16 (Amend. Compl.) at Counts I, II, III, and IV.
[3] Doc. 20 (Br. in Supp.) at 8.

reasons, it is denied in part and granted in part. However, Plaintiff will be provided leave to amend the complaint.

## II. Discussion

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

---

[4] 550 U.S. 544 (2007).
[5] 556 U.S. 662 (2009).
[6] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[7] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[8] Normally, to go consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[9] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[10] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[11] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[12] It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[13] In this matter, both parties have attached documents and dispute which ones the Court may rely on. The Court finds that this standard has been met for Plaintiff's exhibits A, B, and C as well as Defendant's exhibit B.

B. **Facts Alleged in the Amended Complaint**

The facts alleged in the amended complaint, which the Court must accept as true for the purposes of this motion, are as follows.

---

[8] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).
[9] *See* FED. R. CIV. P. 12(d).
[10] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).
[11] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[12] *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
[13] *Faulkner*, 463 F.3d at 134.

Plaintiff, an employee of Defendant, had been working fully remotely since 2016, except for occasional in-person team meetings and in-service days on campus.[14] In October 2021, Defendant set forth a policy mandating that all its employees take the covid vaccine as a condition of their employment ("the vaccine policy").[15] The vaccine policy extended to employees like Plaintiff, who worked fully remotely.[16] Employees were allowed to submit requests for religious exemptions from the vaccine policy, and, if granted, would be fully excused from the vaccine requirement.[17] At that time, fully remote employees who were exempt from the vaccine requirement did not need to undergo further process; specifically, they were not required to take covid tests.[18] Non-remote employees, though, were required to take covid tests if they exempted out of the vaccine policy ("the testing policy").[19] Defendant changed its rules in January of 2022, extending the testing policy to remote workers who exempted out of the vaccine requirement.[20]

Plaintiff is a practicing evangelical Christian who claims religious objections to both the vaccine policy and the testing policy.[21] Plaintiff submits that he is obedient to the Bible, that his body is "indwelt by the Holy Spirit," and, as such,

---

[14]  Doc. 16 (Amend. Compl.) at ¶ 18.
[15]  *Id.*
[16]  *Id.* at ¶ 25.
[17]  *Id.* at ¶¶ 23, 26.
[18]  *Id.* at ¶ 23.
[19]  *Id.* at ¶ 22.
[20]  *Id.* at ¶ 43.
[21]  *Id.* at ¶¶ 29, 47.

"is a temple for which the Christian must give constant and serious care."[22] Plaintiff believes that he is "to honor God with his body by first seeking God's wisdom and healing and by seeking only the things that God has established."[23] Accordingly, "if Plaintiff is sick, he first prays to God to seek wisdom and discretion. When God directs Plaintiff to seek medical help, Plaintiff relies on homeopathic remedies and naturopathic treatments."[24] Neither Plaintiff nor his family receive any vaccines or modern medical intervention in their normal course of life.[25] Additionally, Plaintiff pleads that "[a]fter prayer and fasting, God instructed Plaintiff to have nothing to do with the covid agenda and reminded Plaintiff that Christians are not to enable evil by coming into agreement with any aspect of it."[26]

When the vaccine policy was first implemented, Plaintiff submitted a religious accommodation request to Defendant.[27] Plaintiff attached a letter from his pastor, detailing that Plaintiff's religious objection is one shared by the congregation.[28] In his request, Plaintiff indicated that the basis for his objection was religious in nature, noting that he does not use "man-made pharmaceuticals."[29]

---

[22] *Id.* at ¶ 30.
[23] *Id.* at ¶ 33.
[24] *Id.* at ¶ 34.
[25] *Id.* at ¶¶ 34, 52.
[26] *Id.* at ¶ 50.
[27] *Id.* at ¶¶ 27, 40.
[28] *Id.* at ¶¶ 36-39.
[29] Doc. 16 (Exhibit B).

Plaintiff's accommodation was granted, and, at that time, he was also excused from the testing policy because of his fully remote status.[30]

When Defendant changed its policy in January 2022 to require fully remote workers to submit to the testing policy as well, Plaintiff once again submitted a religious accommodation.[31] In his request, Plaintiff explained that his religious beliefs are contrary to the "covid agenda" and that he is not permitted to "com[e] into agreement with any aspect of it."[32] Defendant responded, allowing Plaintiff's vaccine exemption but refusing his testing exemption request.[33] A month-long battle ensued between Plaintiff and Defendant, where Plaintiff continued to forgo testing and Defendant continued to request Plaintiff's compliance, culminating in Plaintiff's termination for failing to follow the testing policy.[34] Plaintiff brought the instant suit as a result.

### C.    Analysis

Plaintiff asserts claims of religious discrimination based on Defendant's testing policy and vaccine policy, claiming violations of Title VII and the PHRA for both, resulting in a total of four claims.[35] Plaintiff also appears to raise both

---

[30] *Id.* at ¶¶ 40-41.
[31] *Id.* at ¶ 48.
[32] Doc. 16 (Exhibit C). His letter notes, among other things, that "the covid agenda is political in nature, and demonic by design," and that "the Holy Spirit has been revealing inconsistencies, hypocritical behavior, and unrighteousness in this political agenda." *Id.*
[33] Doc. 16 (Amend. Compl.) at ¶ 58.
[34] *Id.* at ¶¶ 60-65.
[35] Doc. 16 (Amend. Compl.) at ¶¶ 12, 14, 16, 17.

wrongful termination theories and failure to accommodate theories for each claim.[36] Defendant addressed the wrongful termination theories at length in its brief in support.[37] However, Plaintiff only argued in support of the failure to accommodate claims in his brief in opposition to the instant motion.[38] At no point in his brief does Plaintiff address the wrongful termination standard or respond to Defendant's arguments.[39] Accordingly, Plaintiff has waived the issue, and all of the wrongful termination theories are dismissed from Counts I-IV.

Turning to the failure to accommodate theories, the parties agree that failure to accommodate claims under Title VII and PHRA require the same analysis and can be considered jointly.[40] Parties also agree about the applicable elements for Plaintiff's claims: 1) the employee sincerely holds a religious belief that conflicts with a job requirement; 2) the employee informed the employer about the conflict; and 3) the employer disciplined the employee for failing to comply with the conflicting requirement.[41]  Once a plaintiff establishes these factors, the burden

---

[36] *Id.* at Counts I-IV. Defendant notes in brief that Plaintiff raises wrongful termination claims in Counts III and IV. Doc. 20 (Br. in Supp.) at 40. The Court notes that all four of Plaintiff's claims purport to be claiming for wrongful termination in their titles, and is unsure why Defendant only argues against two of the counts.

[37] Doc. 20 (Br. in Supp.) at 40. The applicable legal standard for wrongful termination is different than the standard for failure to accommodate. Compare *Doe v. Triangle Doughnuts*, 472 F. Supp. 3d 115, 135 (E.D. Pa. 2020) with *Wilkerson v. New Media Tech. Charter Sch.*, 522 F.3d 315, 319 (3d Cir. 2008).

[38] Doc. 25 (Reply Br.) at 2; Doc. 24 (Br. in Opp.) at *passim*.

[39] Doc. 24 (Br. in Opp.) at *passim*.

[40] Doc. 24 (Br. in Opp.) at 7; Doc. 20 (Br. in Supp.) at 22.

[41] *Wilkerson*, 522 F.3d at 318-19; Doc. 20 (Br. in Supp.) at 21-22; Doc. 24 (Br. in Opp.) at 8.

shifts to the employer to show that it either "made a good-faith effort to reasonably accommodate the religious belief," or that "an accommodation would work an undue hardship upon the employer and its business."[42] An undue hardship requires an employer to establish that the accommodation "would result in substantial increased costs in relation to the conduct of its particular business."[43] However, the burden-shifting framework to determine whether an accommodation was reasonable or whether accommodation would pose an undue hardship is not yet applicable at the motion to dismiss stage.[44] Therefore, at this point, the only consideration is whether Plaintiff has pled sufficient facts to raise a reasonable expectation that discovery will reveal the elements of his claim.[45]

Determining whether a belief is religious in nature is a "most delicate question."[46] "While no court should inquire into the validity or plausibility of a plaintiff's alleged beliefs, it is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder."[47] Secular ideas cannot be transformed into a religious belief by cloaking "all of life's activities" with "religious significance."[48]

---

[42] *Equal Employment Opportunity Comm'n v. GEO Group Inc.*, 616 F.3d 265, 271 (3d Cir. 2010).
[43] *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).
[44] *Miller v. Tithonus Tyrone, L.P.*, No. 3-20-CV-31, 2020 WL 2065941, at *4 (W.D. Pa. Apr. 29, 2020) (citing *Connelly*, 809 F.3d at 791 and *Wilkerson*, 522 F.3d at 319).
[45] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)
[46] *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981).
[47] *Gray v. Main Line Hospitals, Inc.*, 717 F. Supp. 3d 437, 446 (E.D. Pa. 2024) (internal quotations omitted).
[48] *Id.* (internal quotations omitted).

Courts must differentiate between "those whose views were religious in nature and those whose views were essentially political, sociological, or philosophical."[49] "[T]he very concept of ordered liberty precludes allowing [a plaintiff], ... a blanket privilege to make [their] own standards on matters of conduct in which society as a whole has important interests."[50]

In this circuit, to determine whether a belief is religious in nature, courts look to the three *Africa v. Pennsylvania* factors: whether the belief (1) "address[es] fundamental and ultimate questions having to with deep and imponderable matter," (2) is "comprehensive in nature," and (3) is "accompanied by certain formal and external signs."[51] For beliefs to be "comprehensive in nature," they must be more than "isolated, unconnected ideas" and cannot be "generally confined to one question or moral teaching."[52] At this stage, the Court will not, and indeed need not, inquire into the legitimacy of Plaintiffs' beliefs. The main issue here is whether Plaintiff has plausibly pled that he had an objection to the either policy based on religious grounds.

---

[49] *Fallon v. Mercy Catholic Med. Ctr. Of Southeastern Pa.*, 877 F.3d 487, 490 (3d Cir. 2017) (internal quotation omitted).
[50] *Africa*, 662 F.2d at 1031 (internal quotation omitted).
[51] *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1030, 1031).
[52] *Gray*, 717 F. Supp. 3d. at 446-47 (quoting *Africa*, 662 F.2d at 1035) (internal quotation omitted).

1.  **The Testing Policy**

Plaintiff's claims surrounding the testing policy fail on the first element, as the facts as pled do not state a claim that Plaintiff has a religious belief that conflicted with the testing policy.[53] Plaintiff pled several generalized pillars of his religion that he uses to argue that he had a religious objection to the covid testing policy.[54] Most importantly, Plaintiff's testing claim relies on the assertion that "[a]fter prayer and fasting, God instructed Plaintiff to have nothing to do with the covid agenda and reminded Plaintiff that Christians are not to enable evil by coming into agreement with any aspect of it."[55] These pleadings would essentially

---

[53] While Plaintiff need not meet each element of the *prima facie* case to survive a motion to dismiss, he must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Fowler*, 578 F.3d at 213. There is no reason to believe that further discovery would convert Plaintiff's allegations from political disputes to religious ones when this is a matter of legal analysis.

[54] Doc. 16 (Amend. Compl.) at ¶¶ 30-34. For instance, Plaintiff pleads that his body "as indwelt by the Holy Spirit, is a temple for which the Christian must give constant and serious care," that his beliefs are "rooted in the Bible," that he is to "honor God with his body by first seeking God's wisdom and by seeking only the things that God has established," and that, when sick, he prays and only seeks medical help when directed by God. He additionally pleads that "Plaintiff's sincerely held religious beliefs . . . preclude him from weekly covid-19 testing," but this conclusory statement need not be given weight. *Twombly*, 550 U.S. at 555.

These objections are quite similar to those found to be insufficient in *Ritter v. Lehigh Valley Health Network*. No. CV 22-4897, 2024 WL 643543, at *5 (E.D. Pa. Feb. 15, 2024). The plaintiff in *Ritter* objected to receiving the vaccine because her body was a "temple of His Holy Spirit" and that, after prayer, "the Holy Spirit moved on [her] heart, and conscience that [she] must not accept the COVID-19 vaccines." *Id.* at *2. The court in *Ritter* held that "[t]his does not suffice to qualify as a religious belief under *Africa*. As to the first two *Africa* factors, Plaintiff has alleged she is a Christian, which is a comprehensive religion. But her opposition to the vaccine is not a part of a Christian's 'comprehensive system of beliefs about fundamental or ultimate matters,' rather, it is more 'an isolated moral teaching.'" *Id.* (quoting *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465-66 (M.D. Pa. 2022) (Brann, J.)).

[55] Doc. 16 (Amend. Compl.) at ¶ 50. Plaintiff's other contentions are insufficient to show a sincerely held religious belief that conflicts with the testing policy. The Court sees the

give Plaintiff a "'blanket privilege'" and a "'limitless excuse for avoiding all unwanted . . . obligations.'"[56] "[C]ourts have not accepted the proposition that Title VII protects what a plaintiff essentially asserts is a divinely granted right to pick and choose."[57] Plaintiff's claimed religious objection would allow Plaintiff to pick and choose which decisions would bring him in "agreement" with the "covid agenda" and which would not, and, therefore, cannot stand.[58]

      What Plaintiff pleads is, ultimately, a political dispute rather than a religious one. At the very least, his pleadings qualify as "isolated moral teaching[s]" rather than part of the Christian "comprehensive system of beliefs about fundamental or ultimate matters."[59] Plaintiff has not pled sufficient facts to show that his religious beliefs genuinely conflicted with the covid testing policy beyond his generalized objections to the "covid agenda" as a whole, and, therefore, fails to state a plausible claim. Accordingly, Counts III and IV, which are based on Plaintiff's objection to the testing policy, are dismissed.

---

    connection between Plaintiff's claims and the vaccine policy, but fails to see a religious conflict between these generalized teachings and the covid testing policy.
[56] *Finkbeiner*, 623 F. Supp. 3d at 465 (quoting *Africa*, 622 F.2d at 1030, 1031).
[57] *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 WL 2939585, at *4 (E.D. Pa. Apr. 13, 2023).
[58] Doc. 16 (Amend. Compl.) at ¶ 50.
[59] *Ritter*, 2024 WL 643543 at *5.

**2.    The Vaccine Policy**

Plaintiff's remaining two counts deal with the vaccine policy.[60] For these claims, while a close call, Plaintiff has pled sufficient facts to connect his religious beliefs with his objection to taking the vaccine. Plaintiff pled that his entire family does not take any vaccines, instead praying to God when sick and only seeking homeopathic and naturopathic remedies when God directs them to do so.[61] The email Plaintiff sent to Defendant explains that his religion details an aversion to man-made pharmaceuticals, instead living off resources "God has provided."[62]

Additionally, Plaintiff pled that his pastor supported this belief, attaching his letter to the complaint.[63] Plaintiff's objection to the vaccine invokes "fundamental questions concerning deep and imponderable matters," such as whether to accept modern medicine.[64] This does not appear to be an "isolated and unconnected

---

[60] The Court briefly considered whether the vaccine policy counts state effectively the same claim as those disputing the testing policy, given that both disputes center around Plaintiff's objection to the testing policy as violative of his rights. *See* Doc. 24 (Brief in Opp.) at 15 (describing the vaccine dispute as Defendant's failure to "reasonably accommodate Plaintiff's religious objection to weekly testing."). It may be that the testing policy was itself a new policy rather than an accommodation, and that Plaintiff effectively had a choice between two policies. This is additionally demonstrated by Plaintiff's complaint and brief, which rely on the testing policy being both an accommodation (for the counts about the vaccine policy) and a new policy itself (for the counts about the testing policy). However, the Court will not wind itself in knots over issues not discussed by parties. Plaintiff has pled the counts separately and the Court will address it as such. At further stages of litigation, though, parties may be inclined to address this argument.
[61] Doc. 16 (Amend. Compl.) at ¶¶ 30-34; *see Gray*, 717 F. Supp. 3d at 447 (finding that plaintiff following her claimed religious belief in her everyday life, in ways other than the objection at issue, was indicia of its religious nature).
[62] *Id.*
[63] Doc. 16 (Exhibit B).
[64] *Gray*, 717 F. Supp. 3d at 447.

belief,"⁶⁵ as Plaintiff and his family abstain from all forms of pharmaceuticals.⁶⁶ Moreover, Plaintiff has pled some external signs, including the letter from his pastor.⁶⁷ Accordingly, Plaintiff has stated a plausible religious objection to the vaccine policy.⁶⁸

Given that Plaintiff has adequately pled the first element, the other elements of his *prima facie* case are easier to resolve.⁶⁹ Plaintiff has pled that he told the employer about the conflict between his religious beliefs and the vaccine policy.⁷⁰ Moreover, Plaintiff has pled, and Defendant seems to be in agreement with this

---

⁶⁵ *Id.*
⁶⁶ Doc. 16 (Amend. Compl.) at ¶ 34.
⁶⁷ *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360, 2023 WL 362392, at *5 (E.D. Pa. Jan. 23, 2023) (noting that, when determining the third *Africa* factor, courts consider external signs such as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions.").
⁶⁸ *See Worthy v. Unilever United States, Inc.*, No. 2:23-CV-17570, 2024 WL 3326039, at *6-8 (D.N.J. July 8, 2024) (collecting cases). Plaintiff has pled more than mere "body is a temple" arguments that other courts have found insufficient, because he has connected the vaccine to his more general religious objection to man-made pharmaceuticals. *See, e.g., McKinley v. Princeton Univ.*, No. 22-5069, 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023); *Saqa v. Factory Mutual Insurance Co.*, No. CV 23-3994, 2024 WL 939689, at *4 (D.N.J. Mar. 5, 2024). The Court finds this case is most similar to *Leeck v. Lehigh Valley Health Network*. No. 5:22-CV-4634, 2023 WL 4147223, at *6-9 (E.D. Pa. June 23, 2023) (where a plaintiff's objections to the vaccine, similar to Plaintiff's objections here, were found sufficiently pled because the plaintiff tied them to his religious objections to vaccines generally).

While a very close call, Plaintiff has alleged just enough to connect his objection to religion for his claim to survive. The same pleadings were insufficient to raise a claim for the testing policy because, unlike taking a vaccine, covid testing did not involve the imbibing of man-made pharmaceuticals.
⁶⁹ *Wilkerson*, 522 F.3d at 319 (providing the elements that Plaintiff must prove). The Court notes that Plaintiff need not establish a full *prima facie* case, but must only "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Fowler*, 578 F.3d at 213.
⁷⁰ Doc. 16 (Amend. Compl.) at ¶ 35.

fact, that he was fired for failing to comply with the accommodation he received, namely the testing policy.[71] As Plaintiff notes, the burden-shifting framework to determine whether an accommodation was reasonable or whether accommodation would pose an undue hardship is not yet applicable at the motion to dismiss stage, and I accordingly do not analyze whether Defendant reasonably accommodated Plaintiff nor whether an accommodation would be an undue hardship.[72] Therefore, Defendant's motion to dismiss is denied for Counts I and II, those involving the vaccine policy.

### III. CONCLUSION

Defendant's motion to dismiss is granted without prejudice for all wrongful termination claims and for the entirety of Counts III and IV. Defendant's motion to dismiss is denied for the failure to accommodate claims in Counts I and II.

Plaintiff is granted leave to amend. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[73] But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[74]

---

[71] Doc. 16 (Amend. Compl.) at ¶ 65.
[72] *Miller v. Tithonus Tyrone, L.P.*, No. 3-20-CV-31, 2020 WL 2065941, at *4 (W.D. Pa. Apr. 29, 2020) (citing *Connelly*, 809 F.3d at 791 and *Wilkerson*, 522 F.3d at 319).
[73] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).
[74] *Id.* (quoting Fed. R. Civ. P. 15(a)).

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge